UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                          No. 00-4809

PATRICIA TAI,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CR-00-243)

Argued: January 25, 2002

Decided: May 1, 2002

Before WIDENER and GREGORY, Circuit Judges, and
Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Martin Gregory Bahl, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Baltimore, Maryland, for Appellant. Bonnie S. Green-
berg, Assistant United States Attorney, UNITED STATES
ATTORNEY'S OFFICE, Baltimore, Maryland, for Appellee. **ON
BRIEF:** James Wyda, Federal Public Defender, Beth M. Farber,

Assistant Federal Public Defender, Baltimore, Maryland, for Appellant. Stephen M. Schenning, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Patricia Tai (defendant) appeals her conviction for shoplifting. The only error claimed is the district court's denial of her motion to suppress various statements and the bottle of perfume in question. We affirm for the reasons stated by the district court.

### I.

Defendant was shopping at Fort George G. Meade Post Exchange (PX) on June 4, 1999. She was observed and photographed by a television camera when she placed two watches and a box of perfume in her shopping cart.[1] She next entered a dressing room of the PX with the box of perfume and then left the dressing room. She then placed two additional boxes of perfume in her cart. She subsequently replaced into the store stock the watches and three perfume boxes, paid for other items, but not any perfume, and exited the store.

Civilian store detectives Maria Harris (Mrs. Harris) and David Winterling (Winterling) were on duty on June 4, 1999. All store detectives working at the PX are employed by the Army and Air Force Exchange Service (AAFES) for the sole purpose of detecting and preventing shoplifting. Having observed defendant's action on

---

[1] The PX is equipped with multiple video surveillance cameras used to monitor shoppers and prevent theft.

camera, Mrs. Harris proceeded to the perfume shelf and examined the same three perfume boxes, finding one of them empty. The detectives then approached defendant in the lobby outside of the PX. Both detectives were wearing casual attire, Winterling wearing shorts and a T-shirt. Neither detective was carrying a weapon.[2] Winterling identified himself, showing defendant his ID badge.[3] Winterling testified that he then invited defendant back to the PX office to discuss something with her. Defendant did not object to the invitation and followed Mrs. Harris back to the PX office. Winterling testified that he would not have stopped the defendant from leaving at any point during this time. Winterling followed defendant back to the office as a protective measure to ensure that any stolen property would not be re-shelved by defendant.

The security office was a small room containing a desk and chairs. Mrs. Harris, Winterling, and defendant entered the office. The door was then closed, but not locked. Defendant sat in a chair, while the two detectives stood. Winterling told defendant that he believed she had merchandise she had not paid for; defendant initially denied this charge. Winterling then told defendant that he would call the Military Police (MP) and they would search her unless she voluntarily gave up the merchandise. Defendant then pulled the missing bottle of perfume out of her purse, and gave it to the AAFES detectives.[4] Winterling testified that defendant was in the office for a minute or two during this sequence of events. Winterling then called the MPs. Neither Winterling nor Mrs. Harris advised defendant during this series of events of her *Miranda* rights nor that she was free to leave.

Melissa Snopeck (Mrs. Snopeck), an MP stationed at Fort Meade, responded to the call from Winterling. Mrs. Snopeck spoke with Winterling, reviewed the video tape and boxes, and took custody of the perfume. Mrs. Snopeck advised defendant she was being placed under

---

[2] Winterling testified that AAFES detectives are not allowed to arrest suspected shoplifters.

[3] Winterling's ID badge had a Department of Defense seal, but specified that he was an Exchange Detective working for the AAFES.

[4] Defendant stated that this was the same type of perfume she had at home. She claimed that her prior bottle's pump had broken and she meant to obtain a refund.

apprehension[5] for shoplifting. Defendant, who was not placed in handcuffs, walked with Mrs. Snopeck to her patrol car, and was then driven to the MP station. Mrs. Snopeck did not question defendant during this five minute ride; however, defendant told her that she was sorry for her actions, stated that she was hoping to exchange perfume bottles, and expressed concern about picking up her daughter. Mrs. Snopeck did not respond to any of defendant's statements.

Upon arriving at the MP station, Mrs. Snopeck advised defendant of her rights using a written form that defendant initialed. During this consultation, defendant repeated her sorrow for this incident. Having been provided her rights, defendant requested an attorney. After this request, Mrs. Snopeck abandoned all questioning. Defendant was subsequently charged and convicted by a jury of stealing goods of the United States valued at less than $1000 in violation of 18 U.S.C. § 641.[6]

## II.

The district court held a hearing on the motion to suppress the perfume and the statements made by defendant. The witnesses testified *ore tenus* in open court. The district court found that defendant was not subjected to a formal arrest and did not have her freedom restricted to the degree associated with an arrest. It found that defendant was not in custody prior to the arrival of the military police. It found that there was probable cause to arrest and search defendant based on the detective's observation and the video tape independently of her statements. It held the doctrine of inevitable discovery applied and under that theory the bottle of perfume was admissible. With the personal observation of the detective as to the box being empty, which was supported by the video tape as to the balance of the transaction, the district court could hardly have concluded otherwise as to the perfume bottle.

The only questions raised in this appeal are with respect to the statements made by defendant from the time the detectives first

---

[5]Obviously meaning arrest.

[6]Defendant was placed on probation for one year and required to perform 50 hours of community service.

started talking to her until she asked for an attorney at the police station and the introduction of the bottle of perfume which defendant produced from her purse. Claiming error, defendant asserts that these statements and the perfume are inadmissible as violative of *Miranda v. Arizona*, 384 U.S. 436 (1966).

With respect to the perfume, the district court correctly held that it was admissible under the inevitable discovery rule because there was probable cause to arrest defendant at the time she produced the perfume, in view of the observation of one of the detectives as to the empty perfume box and the photographing of the balance of the surrounding events by the video camera. We conclude that this evidence existed independently of the alleged *Miranda* violation claimed by defendant in the detectives' office. Such an alleged violation did not mar any significant part in the chain of events, and, in our opinion, the perfume was admissible under the doctrine of inevitable discovery as set out in *Nix v. Williams*, 467 U. S. 431, 444 (1984), as the district court held.

We find that the statements made to Mrs. Snopeck are also admissible. Mrs. Snopeck did not interrogate defendant during the short car ride to the police station. Statements made during this time were volunteered. Mrs. Snopeck remained quiet throughout the ride, even after defendant initiated conversation. Upon arriving at the station, defendant was read her rights, exercised her rights, and was not questioned. Volunteered, spontaneous remarks, even while in custody, are admissible. *Miranda*, 382 U.S. at 478.

We are unsure as to the exact statements defendant allegedly made to the detectives before Mrs. Snopeck arrived;[7] however, we do not need to address the issue of whether or not defendant was in custody during these statements. The physical evidence of the videotape, the stolen bottle of perfume, and the statements made to Mrs. Snopeck provided the district court with overwhelming evidence of guilt. Assuming, for argument, that defendant was in custody and her statements made to the detectives were in violation of *Miranda*, the district

---

[7]We assume the defendant is challenging her earlier denials of guilt and the statement that she was simply trying to obtain a refund since allegedly her old bottle's pump was broken.

court's admission of such statements was harmless beyond a reasonable doubt, in light of the videotape, the bottle of stolen perfume, and subsequent remarks made to Mrs. Snopeck. See *Chapman v. California*, 386 U.S. 18, 24 (1967).

The judgment of the district court is accordingly

*AFFIRMED.*